UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Terrance L. Bouttee | Civil Action No. 06-0775 |
| | Consolidated with |
| | 06-1711 *and* 07-787 |
| | |
| vs. | Judge Tucker L. Melançon |
| | |
| ERA Helicopters, L.L.C. and | Magistrate Judge Mildred E. Methvin |
| Turbomeca SA, et al | |

MEMORANDUM RULING

Before the Court is the Motion to Dismiss Complaint for Declaratory Judgment
[Rec. Doc. 25] filed by ERA Helicopters, L.L.C. ("ERA"); the Memorandum in
Opposition [Rec. Doc. 31] thereto filed by Turbomeca SA ("Turbomeca"); and the Reply
[Rec. Doc. 34] filed by ERA. Also before the Court is the Motion for Judgment on the
Pleadings [Rec. Doc. 32] filed by Turbomeca; and the Memorandum in Opposition [Rec.
Doc. 36] thereto filed by ERA.  For the reasons that follow, the Motion to Dismiss
Complaint for Declaratory Judgment [Rec. Doc. 25] will be DENIED as MOOT, and the
Motion for Judgment on the Pleadings [Rec. Doc. 32] will be GRANTED.

I.  FACTUAL AND PROCEDURAL HISTORY

The pertinent facts are as follows. On May 13, 2005, ERA was the operator of a
Eurocopter EC 120B helicopter, FAA Reg. No. N588SC.  As the helicopter was being
piloted over the Gulf of Mexico transporting plaintiff Terrance Boutte, from an oil

1

platform in the Gulf to Port Fourchon, Louisiana, its engine malfunctioned, causing the
pilot to make an emergency landing in the Gulf of Mexico.  The water landing was
successful with no immediate damage to the helicopter.  However, during efforts to
recover the helicopter from the water it rolled and inverted.  This submersion of the
aircraft in the salt water rendered the aircraft a total loss.  The helicopter engine that
malfunctioned, resulting in the necessity of an emergency landing in the Gulf of Mexico,
was manufactured by Turbomeca.

On May 10, 2006, Boutte filed a complaint against ERA Helicopters and
Turbomeca USA, Inc., in Admiralty/Marine Product Liability, Civil Action No. 6:06-775,
alleging a claim for damages for injuries resulting from the incident ("Boutte case") [Rec.
Doc. 1].  Defendants ERA Helicopters and Turbomeca subsequently brought cross-claims
against each other: Turbomeca alleges that ERA is a joint-tortfeasor, thus Turbomeca is
entitled to contribution/indemnity under the general maritime or other law from ERA for
reimbursement of all or part of any judgment that might be entered in this action against
Turbomeca [Rec. Doc. 7]; ERA likewise alleges that ERA and Turbomeca are joint-
tortfeasor, thus ERA is entitled to contribution/indemnity under the general maritime or
other law from Turbomeca for reimbursement of all or part of any judgment entered in
this action against ERA [Rec. Doc. 13].

On or about December 16, 2005, ERA, through its insurer, United States Aircraft
Insurance Group (USAU) sent a demand letter to the insurers for Turbomeca and

2

Eurocopter, S.A. ("Eurocopter"), as manufacturers of the engine and helicopter

respectively, contending that because the incident was caused by a defect in the engine,

Turbomeca and Eurocopter were liable for the loss of the helicopter.  After a September

6, 2006 mediation of the claim proved unsuccessful, Turbomeca filed a complaint in this

Court on October 3, 2006, Civil Action No. 6: 06-1711, ("Turbomeca case"), seeking

declaratory judgment that ERA has no right to recover from Turbomeca for the damage

caused to the helicopter as a result of the engine stoppage, the water landing, or the

subsequent inversion of the helicopter during recovery efforts.  Turbomeca also named

CFS Air, LLC ("CFS") as a defendant in the Declaratory Judgment Action, alleging that

"CFS Air is, and was at all times material to this action, the registered owner of [the

subject] helicopter." [Rec. Doc. 1; Civil Action No. 6: 06-1711].  ERA and CFS admits

the allegation, but CFS "denies that it is currently the owner of the aircraft in question,"

and pleads as its "Fourth Defense" that "it has been fully compensated for its interest in

the helicopter and therefore is not a proper party to the instant action."  (*ERA Answer,*

¶14, [Rec. Doc. 6;  Civil Action No. 6: 06-1711]); (*CFS Answer,*  ¶¶ 14,  9; Rec Doc. 7;

Civil Action No. 6: 06-1711]).[1]

---

[1]        The Court finds that the undisputed factual record reflects that ERA was the lessee of the helicopter, and
pursuant to the lease agreement with CFS, ERA assumed the risk of any loss of or damage to the helicopter.
Subsequent to the incident, CFS was paid in full for the loss of the helicopter by USAU, ERA's insurer, in exchange
for which CFS transferred ownership of the helicopter to USAU.  Accordingly, as ERA alleges, CFS has no interest
in this consolidated litigation, and though named as a defendant in the declaratory judgment action, CFS has not
commenced or joined any litigation or made any claim or demand against Turbomeca for the loss of the helicopter.

        ERA represents to the Court that counsel for Turbomeca has suggested that he would not be opposed to
dismissing CFS from the declaratory judgment action once it has been provided with proof of payment to CFS and
CFS's sale of the helicopter and that Counsel for ERA "is in the process of obtaining the documentation and will

Turbomeca seeks declaratory judgment, alleging that it is not liable to ERA and/or CFS for damages arising from the loss of the helicopter on two grounds:  first, that defendants' claims against it are barred by the maritime economic loss doctrine set forth by the United States Supreme Court in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) (*East River* doctrine); and, second, that the damage to the helicopter was caused solely by negligence of ERA or third parties during the process of attempting to recover the helicopter, or that such negligence was a superseding cause such that Turbomeca may not be held liable for the damage to the helicopter. [Rec. Doc. 1, ¶¶ 33, 38; Civil Action No. 6:06-1711].

On October 27, 2006, the undersigned was notified by the Boutte case parties' Rule 26(f) Report that the Boutte case was related to the Turbomeca case [Rec. Doc. 18; Civil Action No. 06-775].  On November 29, 2006, for oral reasons assigned during a telephone conference conducted that date, the Court consolidated the Boutte case (Civil Action No. 06-775) with the Turbomeca case (Civil Action No. 06-1711) [Rec. Docs. 20, 21; Civil Action No. 06-775].

On October 27, 2006, ERA and USAU filed a complaint in the United States District Court for the Southern District of Texas, Galveston Division, Civil Action No. 3:06-678 ("ERA case"), against Turbomeca and Eurocopter, S.A, seeking to recover the

---

forward same to counsel for Turbomeca once it is received." (*ERA's Opposition,* p. 4, FN 1).

loss of the helicopter and related damages caused by the May 13, 2005 incident  [Rec. Doc. 1; Civil Action No. 6:07-787].  The undersigned was notified of the pending related case and that Turbomeca had filed a motion to transfer the ERA case to the Western District of Louisiana, Lafayette Division. In keeping with the Court's comments during the February 9, 2007 telephone conference [Rec. Doc. 47; Civil Action No. 6:06-775], on February 13, 2007, the consolidated Boutte and Turbomeca cases were administratively closed, pending action by the Texas Court on the Motion to Transfer [Rec. Doc. 52;  Civil Action No. 6:06-775].

On April 26, 2007, United States District Judge Samuel B. Kent granted Turbomeca's Motion to Transfer; the case was transferred to the Western District of Louisiana and assigned to Chief Judge Richard T. Haik, Sr., who subsequently reassigned it to the undersigned [See Rec. Docs. 29, 30; Civil Action No. 6:07-787].  On Turbomeca's Motion [Rec. Doc. 54; Civil Action No. 6:06-775], the Court reopened the consolidated Boutte and Turbomeca cases [Rec. Doc. 57; Civil Action No. 6:06-775], and consolidated the ERA case with those consolidated actions [Rec. Doc. 58; Civil Action No. 6:06-775].

At the June 12, 2007 status conference [Rec. Doc. 76; Civil Action No. 6:06-775], ERA and Turbomeca each respectively re-urged its previously filed dispositive motion in the Turbomeca case, which the Court had not acted on as of that time due to the February 13, 2007 administrative closure: the Motion to Dismiss Complaint for Declaratory

5

Judgment [Rec. Doc. 25; Civil Action No. 6:06-775] filed by ERA; and the Motion for

Judgment on the Pleadings [Rec. Doc. 32; Civil Action No. 6:06-775] filed by

Turbomeca.  No motions were or are currently pending in the Boutte and/or ERA cases.

In  ERA's Motion to Dismiss  [Rec. Doc. 25; Civil Action No. 6:06-775], moving

the Court to dismiss Turbomeca's complaint for declaratory judgment,  ERA alleges that,

"all relevant parties are present [in the ERA case, then still pending in Texas, as originally

filed] . . . and . . . all of the issues between Turbomeca and Era and USAU may be

resolved in the litigation pending in the Southern District of Texas," and in fact should be

resolved there as ERA's chosen forum. (*ERA's Motion*, pp. 6-7,11-12). Other than venue,

ERA's Motion does not raise any other grounds on which the Court should dismiss the

declaratory judgment action.  Based on the procedural history of the ERA and

Turbmomeca cases and these consolidated proceedings, as set out above, ERA's Motion

to Dismiss [Rec. Doc. 25;Civil Action No. 6:06-775 ] will be DENIED AS MOOT.

In Turbomeca's Motion for Judgment on the Pleadings [Rec. Doc. 32; Civil Action

No. 6:06-775] on its declaratory judgment action,  Turbomeca moves for judgment in its

favor on the first count of its complaint, alleging that it is not liable to defendants CFS or

ERA for any damages arising from the loss of a helicopter owned by CFS and

leased/operated by ERA because the damages are economic, and as such that are not

recoverable as a matter of law under general maritime law and the *East River* doctrine.

Turbomeca further alleges that this presents a "purely legal issue the resolution of which

6

in Turbomeca's favor finally resolves the dispute and obviates any need for considering the superseding cause issue.  If that motion is granted, Turbomeca's request for relief on Count Two becomes moot and the count can be dismissed on that basis."[2] (*Turbomeca's Motion,* p.4).

In its Opposition [Rec. Doc. 36; Civil Action No. 6:06-775], ERA does not dispute that the general maritime law applies to these consolidated actions; that the harm suffered is economic loss for damage that a product, the helicopter, essentially caused to itself, and ERA has not made a demand for personal injury or damage to property other than the helicopter itself; or that pursuant to general maritime law and the *East River* doctrine, there is no cause of action in tort for such economic loss.  However, ERA requests that the Court apply an exception to the *East River* doctrine in situations where there are allegations of a manufacturer's post-sale negligence.  ERA alleges as a defense in its Answer to Turbomeca's Complaint [Rec. Doc. 6; Civil Action No. 06-1711] and in its Complaint [Rec. Doc. 1; Civil Action No. 6:07-787], as set out above, that "all or a part of its damages were caused by post-sale negligence on the part of Turbomeca."

Importantly, on June 26, 2007, Turbomeca and ERA, as well as the other named parties to the consolidated Turbomeca and ERA cases, Eurocopter, CFS Air and the United States Aviation Underwriters, filed a Joint Status Report and Stipulation [Rec.

---

[2]   The second count being that the damage to the helicopter was caused solely by negligence of ERA or third parties during the process of attempting to recover the helicopter, or that such negligence was a superseding cause such that Turbomeca may not be held liable for the damage to the helicopter. (*Complaint for Declaratory Judgment* ¶¶ 33, 38 [Rec. Doc. 1 in Civil Action No. 6:06-1711]).

Doc. 79; Civil Action No. 06-775] with respect to Turbomeca's Motion for Judgment on the Pleadings to provide a vehicle for the Court to consider all *East River* economic loss issues with respect to both cases although it was not formally raised in the ERA case. The stipulation states:

> [A]ll parties to both the Turbomeca and the ERA Helicopters cases agree that the *East River* economic loss issue presented by that motion is the central issue and is identical in both cases, that the issue is fully briefed and there is no need for further briefing, and that any decision on the economic loss issue should apply to all parties to the Era Helicopters case.

[*Id.*, p. 4].[3]  Based on the parties' stipulation, the Court will construe and consider Turbomeca's Federal Rule of Civil Procedure 12(c) motion to also be before the Court as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss by both Turbomeca and Eurocopter as defendants in the ERA case.   The resolution of this central disputed issue of law -  the applicability and effects of the *East River* doctrine to the facts of this consolidated proceeding - is therefore dispositive in both the ERA and Turbomeca cases as to whether Turbomeca is liable to ERA (or CFS) in tort for the loss of the helicopter, or whether such claims for economic loss resounding in tort should be dismissed.

---

[3]  The parties stipulated and agreed as follows:
       1.       The Court may treat the existing briefing on the *East River* issue in the *Turbomeca* case as applicable to both the *Turbomeca* case and the *Era Helicopters* case and to all parties to those actions.
       2.       The application of the *East River* economic loss rule to claims in the *Turbomeca* and *Era Helicopters* actions has been fully briefed in the *Motion for Judgment on the Pleadings* and opposition thereto that have been filed in the *Turbomeca* action, and no further briefing should be filed unless requested by the Court; and
       3.       The defendants in the *Era Helicopters* action—Turbomeca and Eurocopter—may be deemed to have filed motions to dismiss all claims in that action for failure to state a claim upon which relief can be granted and the plaintiffs in that action may be deemed to have filed oppositions to such motions, and the parties may adopt the existing briefing on the *Motion for Judgment on the Pleadings* filed in the *Turbomeca* action as their respective memoranda of law in support of and opposition to such motions to dismiss. [Rec. Doc. 79, p. 4].

## II. RULE 12(c) and 12(b)(6) STANDARDS

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

pleadings are closed but within such time as not to delay the trial, any party may move for

judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion brought pursuant to

Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in

dispute and a judgment on the merits can be rendered by looking to the substance of the

pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props.,*

*Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (*citing* 5A Charles A. Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 1367, at 509-10 (1990)).

The Court must look only to the pleadings, construed liberally, and  accept all

allegations contained therein as true. *Brittan Communications Int'l Corp. v. Southwestern*

*Bell Telephone Co.*, 313 F.3d 899, 904  (5th Cir. 2002); *St. Paul Fire & Marine Ins. Co.*

*v. Convalescent Serv., Inc.,* 193 F.3d 340, 342 (5th Cir. 1999).  A motion for judgment on

the pleadings should not  be granted unless it appears certain that the party opposing the

motion cannot prove any set of facts that would entitle it to relief.  *Bennett-Nelson v.*

*Louisiana Board of Regents*, 431 F.3d 448, 450 n.2 (5th Cir. 2005).  Judgment on the

pleadings is appropriate where material facts are not disputed and the only issues are

questions of law.  *See Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887

(5th Cir. 1998).  Rule 12(c) allows "any party" to move for judgment on the pleadings

9

"[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R.

Civ. P. 12(c).

The Fifth Circuit applies the same standard for a motion to dismiss under Rule

12(c) as it does for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305,

313 n. 8 (5th Cir.2002); *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999) (relying

upon cases that provide the standard for a Rule 12(b)(6) motion in stating the applicable

standard for a Rule 12(c) motion); *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide

Ins. Co.,* 937 F.2d 274, 279 (5th Cir.1991). "A district court may not dismiss a complaint

under Rule 12(b)(6) unless 'it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Lowrey v. Texas A & M

Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). A motion to dismiss for failure to state a

claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted."

*Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997).

### III. LAW & ANALYSIS

In *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870-71

(1986), the United States Supreme Court held that a maritime plaintiff may not maintain a

tort cause of action against a manufacturer "when a defective product, purchased in a

commercial transaction malfunctions, injuring only the product itself and causing purely

economic loss . . . " *Id.* at 859.  The *East River* Court analogized the situation of a

10

defective product physically harming itself alone to the loss incurred when a product fails to work properly or to work at all; "[o]bviously, damage to a product itself has certain attributes of a products-liability claim. But the injury suffered - the failure of the product to function properly - is the essence of a warranty action." *Id.* at 867-68. The Court noted that "[e]ven when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain - traditionally the core concern of contract law." *Id.* at 870. The Court concluded that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871. Thus, where a defective product malfunctions causing damage only to itself, plaintiff can only maintain a claim for the economic loss suffered under a warranty/contract theory of recovery. *Id; see Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 927 (5th Cir.1987) ("The underlying reason the Court in *East River* denied a tort cause of action to the purchaser for economic loss resulting from damage to the vessel was because such losses represent the failure of the purchaser to receive the benefit of its bargain-traditionally the core concern of contract law."); *Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d 389, 391-391 (5th Cir. 1991) ("Whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss . . . when the only damage is economic loss to the product itself, the purchaser has simply lost the

benefit of its contractual bargain and should be limited to its contractual warranty

remedies.").

In *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997)*, the*

United States Supreme Court explained the rationale behind *East River*:

> [T]he Court [in *East River*] reasoned that the loss of the value
> of a product that suffers physical harm—say, a product that
> destroys itself by exploding—is very much like the loss of the
> value of a product that does not work properly or does not
> work at all.  In all such cases, the Court held, "[c]ontract law,
> and the law of warranty in particular, is well suited" to setting
> the responsibilities of a seller of a product that fails to
> perform the function for which it was intended.

*Id.* at 879-80.  The *Saratoga Fishing* Court instructed "[g]iven the availability of

warranties, the courts should not ask tort law to perform a job that contract law might

perform better."  *Id.* at 880.

At the time Turbomeca filed its declaratory judgment action, it had not yet been

served with any lawsuits relating to the accident, and "[a]s a consequence . . . remains

uncertain of its potential liability, if any, for the claimed loss of the Helicopter,"

however, it still sought to have all of its liability for damages sustained by the helicopter

resolved" (*Turbomeca's Complaint,* p. 7, [Rec. Doc. 1; Civil Action No. 06-1711]).

ERA's Complaint [Rec. Doc. 1; Civ. Action No. 07-787] alleges:

> Defendant Turbomeca designed, manufactured, assembled, distributed, and
> sold the engine of the aforementioned helicopter and its component parts. At
> the time of said accident, and at the time the engine and/or its components left
> the hands of Turbomeca they possessed defects that rendered them
> unreasonably dangerous for their normal and intended uses, all of which
> caused or contributed to causing the accident sued upon herein, rendering
> Turbomeca liable to ERA and USAU for the damages sued upon herein.

> The incident sued upon herein was caused by the breach of the express and/or
> implied warranties by Turbomeca that the engine and its component parts were
> of merchantable quality, free from inherent vices or defects and were fit for
> their normal and intended uses, rendering Turbomeca liable to ERA and USAS
> for such breaches.

12

Defendant Turbomeca was responsible for monitoring the reliabiltiy of the engines it manufactured, assembled, distributed and sold, such as the accident aircraft engine, and investigating catastrophic failures of such aircraft engines to determine the cause or causes for such failures in order to prevent similar failures from occurring in the future. Turbomeca was also responsible for publishing data used by operator in the maintenance and repair of helicopters such as the accident helicopter, and for modifying data from time to time in order to improve the reliabiltiy of such engines and to prevent catastrophic, in-flight failures of such engines.

The incident sued upon herein was caused by negligence, including the post-sale negligent acts or omissions, of Turbomeca acting through its agents, servants, representatives and/or employees. . .

(Id., pp. 3-4).  ERA made the same allegations against defendant Eurocopter as manufacture of the aircraft and other component parts thereof. (*Id*., pp. 4-5).

The *East River* economic loss issue presented by Turbomeca and Eurocopter's dispositive motions and ERA's respective opposition addresses only the claims of negligence, specifically post-sale negligence.  ERA's claims for breach of any express and/or implied warranties, as generally set out in its complaint, are not implicated by the *East River* Doctrine and are not before the Court.  Additionally, noting that an exception to *East River* lies where the defective product damages not only itself but also "other property," and that Turbomeca manufactured a component part, the engine, in which an alleged defect is responsible in whole or in part for the loss of the product in which it was installed,  case law clearly suggests and the parties do not dispute that the plaintiffs cannot recover in tort for loss to the helicopter by claiming that the helicopter is "other property" with respect to the engine; the helicopter itself, not the individual component parts, is the product for purposes of *East River*.[4]   The *East River* doctrine bars ERA from

---

[4]  In *Petroleum Helicopters, Inc. v. Avco Corp*., 930 F.2d 389 (5th Cir.1991), PHI brought suit to recover for the loss of a helicopter that was allegedly caused by the failure of a component part.  The helicopter had an engine failure and made a successful landing on the Gulf of Mexico, where it subsequently capsized, allegedly due to the failure of the emergency floats.  *Id.* at 390. The Fifth Circuit affirmed a grant of summary judgment in favor of the float manufacturer, holding that *East River* barred recovery.  The court noted *East River*'s holding that "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss" and its reasoning that "when the only damage is economic loss to the product itself, the purchaser has simply lost the benefit of its contractual bargain and should be limited to its contractual warranty remedies."  *Id.* at 391-92.  Although PHI sought an exception to *East River* by claiming that the float was the product and the

recovering in a negligence or strict product liability claim under general maritime law from either Turbomeca or Eurocopter for any negligent acts or omissions relating to the design, manufacturing, assembling, distribution, or selling of the helicopter and/or its engine, as well as any defects that rendered either unreasonably dangerous.  ERA must therefore rely on its contract / breach of warranty claims to recover under such a theory, and to the extent ERA has stated a claim(s) for negligence or strict liability for the manufacturing defendants' *pre-sale* acts or omission occurring during or in connection with the manufacturing and/or distribution process, those claims must be dismissed.  The narrow issue before this Court is whether, based on the particular facts before it, *East River* and its progeny, particularly as developed in the Fifth Circuit,  permit an exception to the bar against recovery for economic loss where there are allegations of a manufacturer's post-sale negligence thereby allowing ERA to maintain a claim for the alleged post-sale negligence of Turbomeca and Eurocopter.

Neither the United States Supreme Court nor United States Court of Appeals for the Fifth Circuit have expressly considered whether the reasoning of *East River* allows an exception for post-sale negligence.  In *Nicor Supply Ships Associates v. General Motors Corp.*, 876 F.2d 501 (5th Cir. 1989), the Fifth Circuit did note that the Eleventh Circuit, in a pre-*East River* case, *Miller Industries v. Caterpillar Tractor Co.,* 733 F.2d 813 (11th Cir. 1984) and a New Jersey district court in the not yet overruled case of *McConnell v. Caterpillar Tractor Co.*, 646 F. Supp. 1520 (D. N.J. 1986), had permitted claims for economic loss based on a failure to warn of a defect that was discovered after the sale of the product, but finding its own facts distinguishable, offered *"*no opinion concerning

---

helicopter was "other property," the Fifth Circuit held that the helicopter and float were a single product and a defect in a component part that causes damage to a helicopter does not result in damage to "other property."   *Id.* at 393.  *See also Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 928 (5th Cir. 1987)*; Era Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 1987 WL 10868 (E.D. La. 1987); *Era Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 696 F. Supp. 1096, 1098 (E.D. La. 1988).

whether Nicor would have stated a cause of action had it alleged that General Motors had discovered a defect in the Series 149 engine after its manufacture."  *Id.* at 504- 505.

The Third Circuit Court of Appeals, the only federal circuit court to reach the issue, refused to create an exception for post-sale negligence in *Sea-Land Service, Inc. v. General Electric Co.*, 134 F.3d 149 (3d Cir. 1998), overruling *McConnell v. Caterpillar Tractor Co.*, 646 F. Supp. 1520 (D. N.J. 1986), which had allowed an exception to *East River* for claims of post-sale negligence.  In rejecting the plaintiff's claim in negligence on the basis of a post-sale duty to warn of a defective product, the court stated:

> not . . .discounting the duty of a manufacturer to warn of a defect in order to protect the persons using the product or the public in general. We agree that we, as a society, should attempt to provide every incentive for a manufacturer with knowledge that a defective product is on the market to warn its customers. If the damage, resulting from a defect is other than mere economic loss, *East River* leaves intact all tort-based theories of recovery including, but not limited to, duty to warn.
>
> Where, however, damage from a defect is only to the product itself and is only economic, there is no tort recovery. The policy of economic loss is better adjusted by contract rules than by tort principles. This conclusion is as true for strict liability and negligence cases as it is for failure to warn cases. Thus, a manufacturer may be culpable of a failure to warn, but if the damage is solely to the product itself and is solely economic, there is no tort recovery.

134 F.3d at 155 -156 (citing *East River*, 476 U.S. at 866-68).

District courts both within and outside of the Fifth Circuit are split on the issue. However, the great weight of federal jurisprudence considering an exception for post-sale negligence, as thoroughly briefed by Turbomeca and confirmed by the Court's own independent research, understand the *East River* Doctrine to be a broad, unadulterated bar precluding all negligence claims for economic loss arising out of damages to a defective product. *See Midland Enterprises, Inc. v. Philadelphia Gear Corp.*, 1988 WL 130748, *3 (E.D. La. 1988) ("*East River* immunizes a manufacturer of a product from suit for damages to the manufactured product under a negligence theory, [so] there should be no

doubt that its holding should be read broadly and not limited to those negligence claims specifically addressed in *East River*.")

Nonetheless, ERA invites the Court to recognize an exception to *East River's* economic loss bar for post-sale negligence on the grounds that such claims are distinguishable from claims involving negligence in the manufacture and sale of the product, and in fact are not the types of claims that are intended to be affected by the *East River* doctrine. ERA alleges that the reasoning of *East River* is not applicable where there is post-sale negligence, such as post-sale failure to warn of a defect known only to the manufacturer after the sale, because the parties to the sale of the defective product did not negotiate for and set the terms of their expectations, nor does it involve type of matter for which protection is afforded by warranty law. "A manufacturer's negligence after manufacture has been completed 'goes not to the quality of the product that the buyer expects from the bargain, but to the type of conduct which tort law governs as a matter of social and public policy.'" (*ERA's Opposition,* pp. 8-9, citing *Nicor Supply Ships Associates v. General Motors Corp.*, 876 F.2d 501, 504 (5th Cir. 1989)).

ERA cites *Brown v. Eurocopter*, 143 F. Supp. 2d 781 (S.D. Tex. 2001). Relying principally on the reasoning of the the pre-*East River* Eleventh Circuit case of *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir. 1984), as well as the Fifth Circuit decision in *Nicor*, the court held that "the *East River* doctrine does not apply to this case involving post-sale negligence. . . To hold otherwise would impermissibly allow a manufacturer who is aware that it has a defective product on the market to hide behind its warranty while the buyer unknowingly uses it." . . . *Id.* at 783.

Recognizing that in *Nicor*, the Fifth Circuit did not preclude the possibility of the existence of a post-sale negligence exception, this Court nonetheless declines ERA's invitation, based on the record before it, to allow ERA to maintain its post-sale negligence claims, whether it has its genesis in pre- or post-sale actions or omissions by the

16

manufacturer, over the directly applicable and unequivocated holdings of *East River:* "a manufacturer in a commercial relationship has no duty under either a negligence or strict product-liability theory to prevent a product from injuring itself . . . whether stated in negligence or strict liability, no products liability claim lies in admiralty when the only injury claimed is economic loss." *East River,* 476 U.S. at 871, 874-76.

The Court therefore holds that all of ERA's negligence claims brought under general maritime law against Turbomeca and Eurocopter for the purely economic loss of the helicopter are barred by *East River*.  Accordingly, Turbomeca is entitled to judgment on the pleadings on Count One of its declaratory judgment complaint [Civil Action No. 06-1711] that it is not liable under any tort or strict products liability theory to ERA or CFS for the loss of the helicopter.  To the extent that ERA seeks to recover against Turbomeca or Europter in tort for the economic loss of the helicopter,  "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss," ERA has failed to state a claim upon which its requested relief can be granted, and those claims will be dismissed.  *East River*, 476 U.S. at 876.

## IV. CONCLUSION

For the foregoing reasons, ERA's Motion to Dismiss Complaint for Declaratory Judgment [Rec. Doc. 25] will be DENIED AS MOOT; Turbomeca's Motion for Judgment on the Pleadings [Rec. Doc. 32] will be GRANTED in Civil Action No. 06-1711.  Based on the stipulation of the parties [Rec. Doc. 79], the Court will likewise dismiss all claims that ERA has made in Civil Action No. 07-787 based on negligence.

17